**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COSMOPOLITAN SHIPPING CO., INC., (a Delaware Corporation) | : |
| | : |
| Plaintiff, | **Civil Action No. 18-CV-03167-LGS** |
| | : |
| v. | : |
| CONTINENTAL INSURANCE COMPANY, (a Pennsylvania Corporation), MARSH & McLENNAN COMPANY, (a Delaware Corporation), and MARSH USA, INC., (a Delaware Corporation), | **THIRD AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** : : : |
| Defendants. | : |

Plaintiff, Cosmopolitan Shipping Co., Inc., ("Cosmopolitan Shipping" or "Plaintiff") alleging, upon knowledge as to themselves and its own acts, and upon information and belief with respect to all other matters and by way of complaint against defendants, Continental Insurance Company, for itself and as successor in interest to The Continental Insurance Company of the City of New York and the Marine Office of America Corporation (hereinafter referred to "Continental"), Marsh & McLennan Company and Marsh USA, Inc. (hereinafter "Marsh"), says:

I.     **INTRODUCTION**

1.     This is an insurance coverage and broker negligence action concerning costs incurred by Cosmopolitan Shipping in connection with various third-party liability actions asserted by seamen pursuant to the Jones Act, 46 U.S.C. 30104, seeking damages for bodily injury resulting from alleged exposure to asbestos. The asbestos bodily injury claims arose out of the former shipping operations of Cosmopolitan Shipping. Defendant, The Continental

Insurance Company of the City of New York and/or Marine Office of America Corporation issued protection and indemnity (P&I) insurance policies to Cosmopolitan Shipping as the named insured during at least the period from 1938 through 1951. Continental has denied coverage to Cosmopolitan Shipping with respect to the underlying asbestos claims. Continental's conduct is in breach of its contractual obligations and its duties of good faith and fair dealing.

2.     Cosmopolitan Shipping also brings this action against its insurance broker, Marsh & McLennan Company and Marsh USA, Inc. (collectively "Marsh") arising out of the same third-party liability actions asserted by seamen pursuant to the Jones Act, 46 U.S.C. 30104, seeking damages for bodily injury resulting from alleged exposure to asbestos as a result of the former shipping operations of Cosmopolitan Shipping. Despite being retained and paid by Cosmopolitan Shipping to advise and serve as its insurance broker and despite actually advising Cosmopolitan Shipping on the underlying asbestos claims, Marsh mistakenly and negligently provided advice and failed to tender notice of such claims to Continental or any other insurer in breach of its contractual obligations and its duties of good faith and fair dealing.

## II.    <u>THE PARTIES</u>

### A.    <u>Plaintiff</u>

3.     Plaintiff, Cosmopolitan Shipping Co., Inc. is a corporation organized under the laws of the State of Delaware with a principal place of business located at 139 Blue Mill Road in Morristown, County of Morris, State of New Jersey.

### B.    <u>Defendant</u>

4.     Defendant, The Continental Insurance Company of the City of New York and Marine Office of America Corporation (hereinafter collectively referred to as "Continental") is,

upon information and belief, a corporation organized under the laws of the State of Pennsylvania, and an insurance company related to the CNA Group of Insurance Companies headquartered in Chicago, Illinois which at all relevant times hereto was licensed to conduct business in the State of New Jersey and did business in the State of New Jersey.  Continental is the successor in interest to the Continental Insurance Company of the City of New York and the Marine Office of America Corporation which provided protection and indemnity coverage ("P&I") to Cosmopolitan Shipping Company, Inc., and its affiliated entities.  Continental is also the successor in interest to the United States P&I Agency, Inc. which served as the exclusive agent on behalf of Continental for receiving notice of protection and indemnity claims from its insureds, including, Cosmopolitan Shipping Company.

5.     Continental is an insurance company:

(i)     which is licensed and/or authorized to do business in the State of New Jersey and/or which has, within the time periods relevant to this litigation, transacted business in the State of New Jersey for the purpose of realizing pecuniary benefit. Such acts included contracting to supply services in New Jersey and to insure persons, property, or risks located within New Jersey; and/or

(ii)    which has agreed in the insurance policies which it sold to Plaintiff, their predecessors and/or subsidiaries, to submit at Plaintiff's request to the jurisdiction of any court of competent jurisdiction in the United States, and to comply with all requirements necessary to give such court jurisdiction.

6.     Defendants, Marsh & McLennan Company and Marsh USA, Inc. (hereinafter collectively referred to as "Marsh") are, upon information and belief, corporations organized under the laws of the State of Delaware, with their principal place of business headquartered in

New York, New York which at all relevant times hereto was licensed to conduct business in the State of New Jersey and did business in the State of New Jersey.  Marsh is a licensed insurance brokerage company and was the insurance broker engaged by Plaintiff to manage its insurance coverage program during all relevant times hereto.

  II.  **JURISDICTION AND VENUE**

  7.  This Court has subject matter jurisdiction over this matter pursuant to the United States Constitution, Article III, conferring federal courts with original jurisdiction, exclusive of the courts of the States, over any case of admiralty or maritime jurisdiction, 28 U.S.C. §1333(1), and federal question jurisdiction pursuant to the Jones Act, 28 U.S.C. §1331, 28 U.S.C. §30104.

  8.  The court has personal jurisdiction over this matter because each of the named defendants was authorized to do business in the State of New York and maintained offices in the State of New York within the time period relevant to the causes of action stated herein and/or have transacted business within New York by, inter alia, doing a series of acts in New York for the purpose of realizing pecuniary benefit; contracting to insure persons, property or risks located within New York.

  9.  Pursuant to 28 U.S.C. §1391(c), venue is proper in this Court.

  III.  **BACKGROUND AND NATURE OF THIS ACTION**

  A.  **Underlying Asbestos Claims**

  10.  Forty-Seven (47) lawsuits are currently pending against Cosmopolitan Shipping pursuant to the Jones Act, in which the plaintiffs, former seamen, allege bodily injury as the result of exposure to asbestos on or emanating from a vessel operated by Cosmopolitan Shipping during the periods of the P&I policies issued to it by Continental.  All such claims allege exposure in connection with one or more vessels operated by Cosmopolitan Shipping.

9.      The 47 asbestos lawsuits are now pending against Cosmopolitan Shipping in the United States District Court for the Northern District of Ohio.

10.     The 47 asbestos lawsuits had formerly been part of a multidistrict litigation pending in the United States District Court for the Eastern District of Pennsylvania pursuant to a directive centralizing all Jones Act maritime asbestos-related cases as ordered by the Judicial Panel on Multidistrict Litigation.

11.     The Panel found that centralization would best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.

12.     The Multidistrict Litigation once included more than 150,000 plaintiffs and more than eight million claims.

13.     In September of 2009, in an effort to streamline the litigation of the thousands of cases in the Multidistrict Litigation, the Eastern District of Pennsylvania entered a Case Management Order requiring each plaintiff asserting a claim based upon an alleged asbestos-related malignancy to submit to the Court a copy of the medical diagnosing report or opinion which the claimant now relies upon for the prosecution of the claims as if to withstand a dispositive motion.

14.     The Eastern District of Pennsylvania further required that each report or opinion submitted be based upon objective and subjective data which shall be identified and descriptively set out within the report or opinion.

15.     From approximately 2011 through 2014, hundreds of cases were either dismissed pursuant to dispositive motion or settled pursuant to this Case Management Order.

16.     On or around May 4, 2015, the United States District Court for the Eastern District of Pennsylvania entered an Order remanding the remaining asbestos claims at issue in

the Multidistrict Litigation (*In Re Asbestos Products Liability Litigation*, MDL Docket No. 875) back to the United States District Court for the Northern District of Ohio[1].

17.     Among the many cases that were the subject of the District Court's Remand Order were forty-seven (47) cases implicating Cosmopolitan Shipping Co., Inc. as defendants.

18.     The District Court for the Eastern District of Pennsylvania concluded that all outstanding motions including dispositive motions have been adjudicated.  By virtue of these findings and on the suggestion that additional settlement discussions would only be beneficial once the cases were remanded back to the transferor court (the United States District Court for the Northern District of Ohio), the Eastern District of Pennsylvania remanded the cases back to the Northern District of Ohio for resolution or trial of matters pending within each case.

19.     Cosmopolitan Shipping has expended and continues to expend substantial costs in defending and addressing the underlying asbestos claims asserted against it the United States District Court for the Northern District of Ohio.

**B.     Cosmopolitan Shipping's Former Operations and P&I Coverage for the Underlying Asbestos Claims**

20.     During periods relevant to the underlying claims, Cosmopolitan Shipping operated cargo, bulk and passenger vessels that it either owned or chartered from the United States government primarily for shipping reparations and supplies to the European continent during and after the Second World War.

21.     Arrangements for Protection and Indemnity insurance were established by the United States government for shipping companies operating during and until March 1, 1948 as general agents on behalf of the United States government under an agreement known as the

---

See, MARDOC Suggestion of Remand Order (No. 32) entered May 4, 2015.

Wartimepandi, and premiums for this coverage were paid by the government under this arrangement.

22.     However, and even for government owned vessels, private protection and indemnity insurance was, as in this instance involving Cosmopolitan Shipping, placed by shipping companies operating for their own account during these periods.

23.     In the latter circumstance, Cosmopolitan Shipping through its insurance department maintained Protection and Indemnity insurance coverage with Continental.  Though the government by law mandated that this coverage be maintained on all U.S. vessels chartered, premiums were at all times paid by Cosmopolitan Shipping for this insurance.

**C.     The Continental P & I Policies issued to Cosmopolitan Shipping**

24.     Cosmopolitan Shipping and its affiliates, has had in full force and effect P&I insurance policies with Continental, affording P&I insurance coverage to Plaintiff at all relevant periods herein.  Each such P&I policy was sold to the Plaintiff or its affiliates naming it as an insured and/or additional insured, and each provides P&I insurance coverage for all vessels operated by Cosmopolitan Shipping and any affiliated entities.

25.     Continental Insurance Company issued Protection and Indemnity Policy, No. P & I 3601 to Cosmopolitan Shipping Company for the period  June 30, 1938 through December 31, 1938 with endorsements renewing this policy for successive periods through June 30, 1939.

26.     As specifically set forth in the opening paragraph of the General Conditions and/or Limitations section of Policy No. P&I 3601, any and all notices to the insurer (Continental) required under the terms of the policy shall be given to the United States P&I Agency, Inc. and notice so given shall be deemed as given to and binding on the insurer and the insurer assumes full responsibility and is liable for any and all negotiations, approvals,

adjustments, settlements and actions of the United States P&I Agency, Inc. in all matters pertaining to this insurance.

27.     Based upon the foregoing provision, the United States P&I Agency, Inc. was unequivocally the exclusive agent on behalf of Continental for receiving notice of protection and indemnity claims from its insureds, including, Cosmopolitan Shipping Company.

28.     Cosmopolitan Shipping maintained P&I insurance with Continental for all periods relevant to the underlying asbestos claims and vessels as evidenced by claims correspondence between the United States P&I Agency and Cosmopolitan Shipping insurance representatives exchanged subsequent to the policy periods set forth in the initial Continental P&I policy.

29.     Cosmopolitan Shipping paid substantial premiums to obtain the P&I insurance coverage issued by Continental as identified herein.

30.     In consideration of the premiums paid, the P&I policies require the insurer to pay all sums that Cosmopolitan Shipping and/or its parents and successors, may be obligated to pay because of property damage or bodily injury caused by an "accident" or "occurrence" and to defend and indemnify Cosmopolitan Shipping and its successors and parents in connection therewith.

31.     Cosmopolitan Shipping has performed fully and complied with all of the terms and conditions of the P&I policies required to be performed by them.

32.     Each of the P&I insurance policies relates to a policy period during which bodily injury is alleged to have taken place or is alleged to have been involved in connection with the underlying asbestos claims which have been asserted by the plaintiffs as former seamen serving on Cosmopolitan Shipping owned and/or operated vessels.

33.     Pursuant to the terms of the P&I policies of insurance, Continental is obligated to defend Cosmopolitan Shipping, and to pay the cost of its defense, and to indemnify it for sums that Cosmopolitan Shipping has paid or may be become obligated to pay in connection with the underlying asbestos claims.

34.     Cosmopolitan Shipping has incurred costs and liabilities in connection with the underlying asbestos claims and continues to incur additional defense costs and liabilities in connection therewith.

35.     Further pursuant to the terms of the P&I policy, Continental is obligated to pay any claims covered by the policy as long as such claim is tendered within six (6) months of the settlement and/or payment to a claimant by the insured.  To date, Cosmopolitan Shipping has not settled or adjudicated any of the underlying asbestos claims, and as such, Cosmopolitan Shipping's tender of these cases is timely under the terms of the P&I policy.

      **D.**    **Continental's Issuance of Open Cover Protection and Indemnity Policies to Bareboat Chartering Agents of the United Nations Relief and Rehabilitation Administration ("UNRRA") Including Cosmopolitan Shipping**.

36.      The UNRRA was an international relief agency, largely dominated by the United States, but representing 47 member governments for the purpose of giving relief and rehabilitation to people in liberated countries in Europe and the Far East at the end of World War II.

37.     Relief and rehabilitation under UNRRA consisted of food, clothing, fuel, medicines, household supplies, seeds, fertilizers, livestock, raw materials, machinery, transportation and public utilities.  The purpose of UNRRA was to create a reservoir of emergency supplies and services from which nations who requested assistance could draw from.

38.     Cosmopolitan Shipping Company was a member of UNRRA and served as a bareboat chartering agent that shipped livestock and raw materials on Liberty and Victory vessels from the United States to Italy, Greece and other liberated countries in Europe.

39.     Correspondence and addendums to agreements by and between Cosmopolitan Shipping Company and UNRRA has revealed that Cosmopolitan Shipping bareboat chartered various vessels to Europe and the Far East on behalf of UNRRA, including, but not limited to, the SS Carroll Victory, the SS Joaquin Miller, the SS William L. Phelps, and the SS Thomas W. Murray.

40.     The SS Carroll Victory, the SS Joaquin Miller, the SS William L. Phelps, and the SS Thomas W. Murray were all vessels in which at least nine (9) of the plaintiffs in the underlying asbestos action served aboard during the relevant period.

41.     In addition, internal UNRRA documents provided that since the cost of insurance was to be paid by UNRRA and since UNRRA agreed to hold harmless bareboat operating agents from any loss arising from inadequate insurance of which Cosmopolitan Shipping is specifically identified, UNRRA procured the necessary P&I insurance for Cosmopolitan Shipping's account.

42.     Moreover, UNRRA policy endorsements identified Continental Insurance Company as having issued an open cover – protection & indemnity policy in favor of UNRRA during the relevant period.

43.     These documents and information demonstrated that: a.) Cosmopolitan Shipping was a member of UNRRA and served as the bareboat chartering agent for four (4) vessels during time periods in which nine (9) plaintiffs in the underlying asbestos cases served aboard; b.) UNRRA procured protection and indemnity coverage on behalf of its bareboat operating agents;

and c.) Continental Insurance Company insured the UNRRA under an open cover protection and indemnity policy during the relevant period.

44.     Cosmopolitan Shipping has given notice of the underlying asbestos claims to Continental and has requested that defendants honor their obligations pursuant to the P&I policies.

45.     Continental has either failed or refused to honor their obligations to Plaintiff pursuant to the P&I insurance policies.

46.     On or around June 19, 2017, Continental issued a letter to Cosmopolitan Shipping denying coverage under the P&I policies for the underlying asbestos claims.

47.     The denial letter wholly and erroneously ignored the terms and conditions of the P&I policy and specifically failed to address claims correspondence and secondary evidence of continued P&I coverage maintained by Cosmopolitan Shipping.

48.     Continental's failure to honor obligations to Cosmopolitan Shipping has harmed and will continue to harm Cosmopolitan Shipping because such failure has required Cosmopolitan Shipping to expend sums for its defense incurred to date in connection with the underlying asbestos claims and has further required Cosmopolitan Shipping, as a matter of prudent business planning to prepare against the possibility that it will receive no indemnification for future defense costs and potential liabilities.

49.     By reason of the foregoing breach of contractual duties by Continental Cosmopolitan Shipping has been damaged.

       **E.**    **Marsh's Long-Standing Relationship as Licensed Insurance Broker to Cosmopolitan Shipping and Marsh's Failure to Adequately Tender Notice of the Underlying Asbestos Claims to Continental.**

50.     Marsh has had a long-standing relationship with Plaintiff in consulting and providing all types of insurance coverage, assessment of risk, adequacy of coverage and the handling of claims.   Plaintiff has and always did rely upon Marsh with respect to the procurement of all types of insurance coverage, assessment of risk, adequacy of coverage and the handling of claims.

51.     In connection with its long-standing relationship with Marsh, Plaintiff retained Marsh specifically to advise and consult with respect to the underlying asbestos claims at the time of their filings and the P&I coverage responding to such claims.

52.     By memorandum dated February 25, 1997 (hereinafter the "Marsh Memorandum"), Marsh provided Cosmopolitan Shipping advice and recommendations regarding P&I insurance that would be responsive to the underlying asbestos claims pending against Cosmopolitan Shipping.

53.     The Marsh Memorandum made reference to research it conducted and recommendations it proffered to Cosmopolitan Shipping in 1995 with respect to P&I coverage and tendering the defense to the underlying asbestos claims.

54.     After discussing the factual background of P&I insurance issued to Cosmopolitan Shipping for the periods relevant to the underlying asbestos claims, the Marsh Memorandum recommends and advises Cosmopolitan to attempt to tender the defense to the United States government.

55.     The advice and recommendations made by Marsh to Cosmopolitan Shipping in 1995 and memorialized in the Marsh Memorandum dated February 25, 1997 were erroneous.

56.     Upon information and belief, Marsh failed to ever tender the defense of the underlying asbestos claims to Continental under the P&I policies issued by it to Cosmopolitan Shipping for the periods relevant to the underlying asbestos claims.

57.     Marsh held itself out as a risk management and full service insurance broker with specific knowledge of the insurance policies issued to Cosmopolitan Shipping and was designated as a professional.

58.     Cosmopolitan Shipping has a long-standing relationship with Marsh and specifically retained it to advise and provide recommendations to it with respect to all aspects of its insurance coverage program, including, but not limited to, assessment of risk, adequacy of coverage and the handling of claims.

59.     Plaintiff has and always did rely upon Marsh with respect to the procurement of all types of insurance coverage, assessment of risk, adequacy of coverage and the handling of claims.

60.     As Cosmopolitan Shipping's licensed insurance broker, Marsh had a duty to advise and provide recommendations to Cosmopolitan Shipping with respect to all aspects of its insurance coverage program, including, but not limited to, assessment of risk, adequacy of coverage and the handling of claims.

61.     Cosmopolitan Shipping fully performed its obligations under its contractual arrangement with Marsh.

62.     Marsh failed to perform and materially breached its contract and agreement with Cosmopolitan Shipping when it wrongfully and erroneously provided advice and recommendations to Cosmopolitan Shipping and failed to ever tender the defense of the

underlying asbestos claims to Continental under the P&I policies issued by it to Cosmopolitan Shipping for the periods relevant to the underlying asbestos claims.

63.     By reason of the foregoing negligence and breach of contractual duties by Marsh, Cosmopolitan Shipping has been damaged.

## FIRST COUNT
**(Declaratory Judgment)**
**(As to Defendant, Continental)**

64.     Plaintiff repeats the allegations of paragraphs 1 through 63 hereof as if set forth at length herein.

65.     Continental has failed to honor or have disputed or will dispute their obligations to defend and indemnify Plaintiff and to pay Plaintiff's defense costs in connection with the underlying asbestos claims.

66.     By reason of the foregoing, an actual or justiciable controversy exists between the Plaintiff and Continental regarding the duties and obligations under the insurance policies issued by Continental, and a judicial declaration is necessary to determine Plaintiff's rights and Continental's duties regarding the underlying environmental claims.

**WHEREFORE,** Plaintiff demands judgment in their favor against Defendant, Continental:

1.     Declaring pursuant to the terms of the P&I policies, that the Defendant, Continental is obligated to defend and indemnify Plaintiff and to pay costs of Plaintiff's defense in connection with the underlying asbestos claims;

2.     Declaring that Plaintiff is entitled to designate which of the P&I policies and policy years shall be called upon to provide such defense and indemnity;

3.     For money damages together with prejudgment interest and post judgment interest;

4.     For costs of suit;

5.     For counsel fees provided for in a declaratory judgment action; and

6.     For such other and further relief as the court may deem just and proper.

## SECOND COUNT
### (Breach of Contract)
### (As to Defendants, Continental and Marsh)

67.     Plaintiff repeats the allegations contained in paragraphs 1 through 66 as if set forth at length herein.

68.      Plaintiff has incurred and will continue to incur defense costs and liabilities in connection with the underlying asbestos claims.

69.     Continental failed and refused or will refuse to reimburse and indemnify Plaintiff for such costs and liabilities in the underlying asbestos claims.

70.     By reason of the foregoing, Continental has breached its obligation under the P&I policies sold to Plaintiff and/or their successors and/or parents, and is liable to Plaintiff for damages, costs, and payment and all other sums incurred by Plaintiff or which may be incurred, together with the costs and disbursements of this action, including but not limited to reasonable attorneys' fees and prejudgment and post judgment interest.

71.     Cosmopolitan Shipping has a long-standing relationship with Marsh and specifically retained it to advise and provide recommendations to it with respect to all aspects of its insurance coverage program, including, but not limited to, assessment of risk, adequacy of coverage and the handling of claims.

72.     Plaintiff has and always did rely upon Marsh with respect to the procurement of all types of insurance coverage, assessment of risk, adequacy of coverage and the handling of claims.

73.     As Cosmopolitan Shipping's licensed insurance broker, Marsh had a duty to advise and provide recommendations to Cosmopolitan Shipping with respect to all aspects of its

insurance coverage program, including, but not limited to, assessment of risk, adequacy of coverage and the handling of claims.

74.     Cosmopolitan Shipping fully performed its obligations under its contractual arrangement with Marsh.

75.     Marsh failed to perform and materially breached its contract and agreement with Cosmopolitan Shipping when it wrongfully and erroneously provided advice and recommendations to Cosmopolitan Shipping and failed to ever tender the defense of the underlying asbestos claims to Continental under the P&I policies issued by it to Cosmopolitan Shipping for the periods relevant to the underlying asbestos claims.

76.     By reason of the foregoing, Marsh has breached its obligation under its agreement to provide licensed insurance broker services to Plaintiff, and is liable to Plaintiff for damages, costs, and payment and all other sums incurred by Plaintiff or which may be incurred, together with the costs and disbursements of this action, including but not limited to reasonable attorneys' fees and prejudgment and post judgment interest.

**WHEREFORE,** Plaintiff demands judgment in their favor against Defendants, Continental and Marsh:

1.     Declaring pursuant to the terms of the P&I policies, that the Defendants are obligated to defend and indemnify Plaintiff and to pay costs of Plaintiff's defense in connection with the underlying environmental claims;

2.     Declaring that Plaintiff is entitled to designate which of the P&I policies and policy years shall be called upon for such defense and indemnity;

3.     For money damages together with pre-judgment and post-judgment interest;

4.     For cost of suit;

5.      For counsel fees as provided for a declaratory judgment action; and

6.      For such other and further relief as the court may deem just and proper.

**COUNT THREE**
**(Negligence)**
**(As to Defendant, Marsh)**

77.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 76 as if same were set forth at length herein.

78.     Plaintiff and Marsh had a long-term relationship and Marsh acted as Plaintiff's insurance broker and provided risk assessment and professional advice and counsel to Plaintiff as to risk management and insurance coverage over the length of the relationship.

79.      Plaintiff has and always did rely upon Marsh with respect to the procurement of all types of insurance coverage, assessment of risk, adequacy of coverage and the handling of claims.

80.     In connection with its long-standing relationship with Marsh, Plaintiff retained Marsh specifically to advise and consult with respect to the underlying asbestos claims and the P&I coverage responding to such claims.

81.     Marsh provided Cosmopolitan Shipping advice and recommendations regarding P&I insurance that would be responsive to the underlying asbestos claims pending against Cosmopolitan Shipping.

82.     The Marsh Memorandum made reference to research it conducted and recommendations it proffered to Cosmopolitan Shipping in 1995 with respect to P&I coverage and tendering the defense to the underlying asbestos claims.

83.     After discussing the factual background of P&I insurance issued to Cosmopolitan Shipping for the periods relevant to the underlying asbestos claims, the Marsh Memorandum

recommends and advises Cosmopolitan to attempt to tender the defense to the United States government.

84.     The advice and recommendations made by Marsh to Cosmopolitan Shipping in 1995 and memorialized in the Marsh Memorandum dated February 25, 1997 were erroneous.

85.     Upon information and belief, Marsh failed to ever tender the defense of the underlying asbestos claims to Continental under the P&I policies issued by it to Cosmopolitan Shipping for the periods relevant to the underlying asbestos claims.

86.     Marsh held itself out as a risk management and full service insurance broker with specific knowledge of the insurance policies issued to Cosmopolitan Shipping and was designated as a professional.

87.     As Cosmopolitan Shipping's licensed insurance broker, Marsh had a duty to advise and provide recommendations to Cosmopolitan Shipping with respect to all aspects of its insurance coverage program, including, but not limited to, assessment of risk, adequacy of coverage and the handling of claims.

88.     Marsh failed to perform and materially breached its contract and agreement with Cosmopolitan Shipping when it wrongfully and erroneously provided advice and recommendations to Cosmopolitan Shipping and failed to ever tender the defense of the underlying asbestos claims to Continental under the P&I policies issued by it to Cosmopolitan Shipping for the periods relevant to the underlying asbestos claims.

89.     Cosmopolitan Shipping relied upon the representations and recommendations made by Marsh with respect to Marsh's handling of the underlying asbestos claims.

90.     Marsh failed to notify Cosmopolitan Shipping of its failure to tender the defense of the underlying asbestos claims to Continental under the P&I policies issued by it to

Cosmopolitan Shipping for the periods relevant to the underlying asbestos claims despite its knowledge that Plaintiff was relying upon Marsh and Marsh promised to perform all of its professional services in a timely manner.

91.     Marsh's negligent acts resulted in the damages sought herein and Marsh is liable to Plaintiff for all losses sustained by Cosmopolitan Shipping in connection with the underlying asbestos claims.

**WHEREFORE**, Plaintiff demands Judgment against Defendants, Marsh for:

a)      Compensatory damages;

b)      Attorneys' fees;

c)      Pre-judgment and post-judgment interest, jointly and severally;

d)      Cost of suit; and

e)      Such other and further relief as this Court may deem equitable and just.

**COFFEY & ASSOCIATES**
310 SOUTH STREET
MORRISTOWN, NEW JERSEY 07960
TEL: (973) 539-4500 • FAX: (973) 539-4501
Attorneys for Plaintiff, Cosmopolitan Shipping Co., Inc.

By:   */s/ Gregory J. Coffey*
        Gregory J. Coffey

Dated: September 14, 2018

## JURY DEMAND

Plaintiff demands a trial by jury on issues herein stated.

20

## <u>DESIGNATION OF TRIAL COUNSEL</u>

Plaintiff hereby designates Gregory J. Coffey, Esq. of the law firm of Coffey &
Associates, 310 South Street, Morristown, New Jersey as trial counsel in this matter.

**COFFEY & ASSOCIATES**
310 SOUTH STREET
MORRISTOWN, NEW JERSEY 07960
TEL: (973) 539-4500 • FAX: (973) 539-4501
Attorneys for Plaintiff, Cosmopolitan Shipping Co., Inc.

By:  */s/ Gregory J. Coffey*
        Gregory J. Coffey

Dated: September 14, 2018